## UNITY BANKING AND SAVING COMPANY *v.* BETT-MAN, TRUSTEE OF HOLZMAN & CO., BANKRUPTS.

### APPEAL FROM THE CIRCUIT COURT OF APPEALS FOR THE SIXTH CIRCUIT.

No. 126.    Argued March 4, 7, 1910.—Decided April 4, 1910.

As against the true owner, a right of property cannot be acquired by means of a forged written instrument relating to such property, except when the owner has by laches or gross or culpable negligence induced another who proceeds with reasonable care to act in belief that the instrument was genuine or would be so recognized by the owner.

Where the owner of property which passes only by written transfer has left it with another who has wilfully forged the name of such owner to a transfer of the property, the person taking it acquires no right thereto merely because the property was left with party committing the forgery.

*Quære*, how far a broker having lawful possession of stock certificates belonging to a customer, the legal title to which has not been transferred to him, may retain the same as security for any debt balance of such customer.

THE only question to be determined in this case relates to the ownership of fifty shares of preferred stock in the Philip Carey Manufacturing Company, a corporation of Ohio.

On or about May 13th, 1905, Richard Fritz, the owner of such shares, placed the certificate for them in the hands of a member of the partnership of Holzman & Co., brokers, with or through whom Fritz had some dealings. The deposit of the stock with that firm was upon an express agreement that it was to be held by them only to show Fritz's financial responsibility, and was not to pass out of their possession. There was no change in the terms or conditions of that contract. The certificate was in the name of Fritz Brothers, and was thus indorsed: "For value received, I, the undersigned, hereby sell and transfer to Richard Fritz fifty shares of stock within mentioned and described and hereby appoint              true and lawful attorney irrevocable, with power and [of] substitution to transfer said stock on the books of the company. Witness              hand and seal this 5th day of January 1905. Fritz Bros. per Otto H. Fritz. Witness Max Winkler."

On May 5th, 1905, without the knowledge or consent of Fritz, this certificate was pledged by Holzman & Co. with the Unity Banking and Saving Company as a substituted security for a note, dated March 21st, 1905, for $10,000, which that firm had executed to the bank, other security of substantially the same value being withdrawn at the time of the substitution. That transaction had no connection with any dealings by Holzman & Co. for or on behalf of Fritz.

When the pledge to the bank was made there was pinned to the certificate a blank power of attorney purporting to have been signed May 13th, 1905, by Richard Fritz in the presence of Ross Holzman, the active member of the firm of

Holzman & Co. None of the blanks in the power of attorney were then filled out, and the only writing on the paper included the date, the name of Richard Fritz in the blank for the signature, and Ross Holzman in the blank for the attestation.

Upon the petition of certain creditors of Holzman & Co., that partnership and the individuals composing it were on July 1st, 1905, adjudicated bankrupts by the District Court of the United States for the Southern District of Ohio, the petition charging that the act of bankruptcy was committed May 25th, 1905. Boyden was the first trustee in the bankruptcy case. He subsequently resigned and was succeeded by Bettman. The case was sent to a Referee in Bankruptcy to take such further proceedings as might be necessary.

Richard Fritz filed in the bankruptcy proceeding a claim, supported by affidavit, that he owned the certificate of stock placed with Holzman & Co., and which, as above stated, was afterwards pledged by that firm, without the authority or knowledge of Fritz, with the Unity Banking and Saving Company. He neither signed, nor authorized to be signed for him, the blank power of attorney of May 13th, 1905, and his name to that paper was a forgery. It does not appear who committed the forgery. But at the time of the hearing of the case Ross Holzman was beyond the jurisdiction of the court and in parts unknown. The Referee so stated.

The relief sought by Fritz was, among other things, an order requiring the delivery to him of the above stock in the Philip Carey Manufacturing Company, free from the claims of all the parties.

At the time of the hearing below the certificate for the stock had come under the control of the court. The Banking and Saving Company asserted its right to the possession of the stock and to retain the certificate therefor, with authority to apply the proceeds of the sale of the stock on the loan for which it had been pledged to the bank. The trustee asked

the determination of the controversy between Richard Fritz
and the Manufacturing Company and for the protection of
the interests represented by him as trustee. He contended
that if Fritz did not sign the power in question, he authorized
it to be signed for him.

The cause was sent to a Referee in Bankruptcy, who found
that Richard Fritz had never signed the above power of
attorney, nor authorized any one to sign it for him; that he
was the owner of the fifty shares of stock represented by the
certificate; and that he was entitled to the possession of them,
free of all liens and interests, either by the Unity Banking
and Saving Company or of the trustee in bankruptcy. The
Referee thus stated his conclusion of law from the facts found
by him: "Where F deposits with a broker a certificate of
stock belonging to F and in his name, without any indorse-
ment or power to execute or transfer of said stock, upon an
agreement that said stock is to be held by said broker as an
evidence of F's financial responsibility only and is not to
leave the broker's possession, and the broker pledges said
certificate to a bank as security upon a note of the broker for
money loaned by the bank to the broker for general use of
the broker, the bank holds said certificate, subject to all the
conditions of the original deposit by F with the broker, and
F is not estopped to claim title to said certificate as against
the bank by the mere placing of said certificate in the hands
of the broker, or the further fact that in the course of dealings
between F and the broker large balances have at various times
been owed by F to the broker when it appears that no demand
for the payment of said balances was made upon F or notice
served upon him changing the conditions of the deposit of
said stock and further, that at the conclusion of the dealings
between F and the broker, F is a creditor and not a debtor
of said broker."

This order, upon being brought before the court in bank-
ruptcy for review, was affirmed. The case was then carried
by appeal to the Circuit Court of Appeals, which affirmed the

decree of the District Court. Only the Unity Bank and Saving Company appealed to this court.

*Mr. Constant Southworth,* witn whom *Mr. Louis J. Dolle* was on the brief, for appellant:

Fritz was engaged in a gambling transaction with the bankrupts. He has no standing in this court of equity to claim the Carey certificate.

Fritz and the bankrupts are charged with knowledge that their dealings were illegal. See *Re A. B. Baxter & Co.,* 152 Fed. Rep. 137; *Wood v. Hubbell,* 10 N. Y. 479; *Irwin v. Williar,* 110 U. S. 499, 511; *Flagg v. Baldwin,* 38 N. J. Eq. 219, 231; *Lester v. Buel,* 49 Ohio St. 240, 252; *Barnard v. Backhaus,* 52 Wisconsin, 593. Hence Fritz has no standing in this court of equity. *Kahn v. Walton,* 46 Ohio St. 195; *Higgins v. McCrea,* 116 U. S. 671; *Loevy v. Kansas City,* 168 Fed. Rep. 524; *Marden v. Phillips,* 4 Am. Bk. Rep. 566; *St. Louis R. R. Co. v. Terre Haute R. R.,* 145 U. S. 393, 407; *Thomas v. City of Richmond,* 12 Wall. 349; *Hanauer v. Doane,* 12 Wall. 349.

The Unity Bank is in a far better position than the bankrupts. If the bankrupts could have interposed the defense of illegality, much more can the Unity Bank, which is an innocent purchaser for value. *Baxter v. Deneen,* 98 Maryland, 181; *Plank v. Jackson,* 128 Indiana, 424; and see *Cont'l Wall Paper Co. v. Voight & Sons Co.,* 212 U. S. 227.

As against an innocent purchaser for value such as the Unity Bank, Fritz has no standing in this court of equity to recover the Carey certificate, because his gambling partners abused his confidence. See Ohio statutes as to gaming, § 6934a–1; § 1; § 6934a–2; § 6934a–4; § 4.

The Ohio statutes as to losses at gaming are in the nature of penal statutes, *Paul v. Groene,* 4 O. L. R. 632; and of course they will not be recognized or enforced in a Federal court. *Perkins v. B. & A. R. R. Co.,* 90 Fed. Rep. 321. The local law, including the Ohio cases, controls. *Security Warehousing Co. v. Hand,* 206 U. S. 415.

The fact of the illegality of a contract may be raised at any time in a legal proceeding; and the court may do so of its own motion in the absence of objection by the parties. *Oscanyan* v. *Arms Co.*, 103 U. S. 261; *In re Wilde's Sons*, 144 Fed. Rep. 972; Loveland's Bankruptcy, 3d ed., 143.

The answer of the Unity Bank is evidence and proves that the disputed signature is genuine and adopted by Fritz.

Bankruptcy proceedings are governed by the rules of equity. *Re McIntire*, 142 Fed. Rep. 593; *Bardes* v. *Bank*, 178 U. S. 524; *Dodge* v. *Nortin*, 133 Fed. Rep. 363; *Nashville Ry. Co.* v. *Bum*, 168 Fed. Rep. 862; *Shook* v. *Dozier*, 168 Fed. Rep. 867; *Scott* v. *McNeely*, 140 U. S. 106; *Elliott* v. *Toeppner*, 187 U. S. 327; General Orders in Bankruptcy, No. 37; *Schwarts* v. *Siegel*, 117 Fed. Rep. 13, 16; *In re Rochford*, 124 Fed. Rep. 182; *In re Cooper. Bros.*, 159 Fed. Rep. 956; *Goldman* v. *Smith*, 93 Fed. Rep. 182; *Dokken* v. *Page*, 147 Fed. Rep. 438; *Barton* v. *Barbour*, 140 U. S. 126; *Rouse* v. *Hornsby*, 161 U. S. 588; *Mercantile Trust Co.* v. *Pitts. & W. Ry. Co.*, 115 Fed. Rep. 475; Loveland's Bankruptcy, 3d ed., pp. 34, 88, 458, 459.

Marshalling assets is essentially equitable relief. 2 Pomeroy's Equitable Remedies, § 865 (6 Pomeroy's Eq. Jur., § 865).

The circumstantial evidence in the case shows conclusively that the power of attorney was Fritz's either by actual execution or by adoption. The referee wrongfully placed the burden of proof on the Unity Bank, which materially prejudiced its rights. *McNutt & Ross* v. *Kaufman*, 26 Ohio St. 127; *List & Sons Co.* v. *Chase*, 80 Ohio St. 42.

Where a party like Fritz attempts to make his case by proving the commission of crime, as forgery, in a civil case, his testimony must be clear and convincing. *United States* v. *Am. Bell Tel. Co.*, 167 U. S. 224; *Lexington Ins. Co.* v. *Paver*, 16 Ohio, 324, 332; approved in *Strader* v. *Mullane*; 17 Ohio St. 624; *Still* v. *Wilson*, Wright, 505; *Sprague* v. *Dodge*, 48 Illinois, 142; *Lalone* v. *United States*, 164 U. S. 255; *Conner* v.

*Groh,* 90 Maryland, 674; *Kansas M. O. M. Ins. Co.* v. *Rammelsberg,* 58 Kansas, 531.

The bankrupts had the right to rehypothecate the Carey stock to raise money to carry out Fritz's orders. The Unity Bank, therefore, acquired a valid lien to the extent of its advance. *Lawrence* v. *Maxwell,* 58 Barb. (N. Y.) 511; 53 N. Y. 19; *Whitlock* v. *Seaboard National Bank,* 29 Misc. (N. Y.) 84; and see also *Martin* v. *Megargee,* 212 Pa. St. 558; *Horton* v. *Morgan,* 19 N. Y. 170; *Caswell* v. *Putnam,* 120 N. Y. 152; *Mays* v. *Knowlton,* 134 N. Y. 250; *Berlin* v. *Eddy,* 33 Missouri, 426; *Price* v. *Gover,* 40 Maryland, 103.

The rehypothecation of the Carey certificate to the Unity Bank gave it in equity all the rights of the bankrupts. *Talty* v. *Freedman's Savings & Trust Co.,* 93 U. S. 321; *Belden* v. *Perkins,* 78 Illinois, 449; and see also *Donald* v. *Suckling,* L. R., 1 Queen's Bench, 585; *Reardon* v. *Patterson,* 19 Montana, 231; *National Cash Register Co.* v. *Cerrone,* 76 Ohio St. 12.

It is also held that the assignment of the collateral carried with it the debts secured. *Lahmers* v. *Schmidt,* 35 Minnesota, 434; *Dintruff* v. *Crittenden,* 1 Thomp. & C. (N. Y.) 143; *Hawkins* v. *Oswald,* 2 Woodw. Dec. (Pa.) 345.

It makes no difference whether or not Fritz knew of the equitable assignment to the Unity Bank of his debt, or that the equitable assignment was of part only of his debt to the bank. *Knickerbocker Trust Co.* v. *Coyle,* 139 Fed. Rep. 792; *Exchange Bank* v. *McLoon,* 73 Maine, 498, 505; Jones on "Liens," 2d ed., § 43. Fritz's debt to the bankrupts is still unpaid. Fritz was negligent and must bear any loss that may occur. *First National Bank of Chicago* v. *Baird,* 141 Fed. Rep. 862; *Brown* v. *Blydenburg,* 7 N. Y. 141, approved in *Kenochan* v. *Dunham,* 48 Ohio St. 1, 24; *Syracuse Savings Bank* v. *Merrick,* 182 N. Y. 387; *Hoffmaster* v. *Black,* 78 Ohio St. 1; 4 Cyc. 85, note 13.

Even though Fritz could recover the Carey stock from the bankrupts, he cannot recover it from an innocent transferee,

such as the Unity Bank. *Fenno* v. *Sare*, 3 Alabama, 458; *Willis* v. *Hockaday*, 1 Spear (So. Car. Law), 379; *Chiles* v. *Coleman*, 2 A. K. Marshall (Ky.), 296 (687); *Neuremberger* v. *Lehenhauer*, 23 Ky. L. Rep. 1753; *Greathouse* v. *Throckmorton*, 7 J. J. Marshall (30 Ky.), 17, 28; *Harrod* v. *Black*, 1 Duv. (62 Ky.) 180; *Braswell* v. *Braswell*, 109 Kentucky, 15, 17; *Smith* v. *Kamerer*, 152 Pa. St. 98; *Martinez* v. *Lindsey & Gay*, 91 Alabama, 334; *Parsons* v. *Joseph*, 92 Alabama, 403; *Maue* v. *Krell Piano Co.*, 7 O. L. R. 539; *Lawler* v. *Kell*, 4 Ohio Nisi Prius, 218; *Oliver* v. *Cincinnati, C. & W. Tpk. Co.*, Hosea, 457, affirmed. And see *Combes* v. *Chandler et al.*, 33 Ohio St. 178.

*Mr. Theodore Horstman* for appellee Fritz.

MR. JUSTICE HARLAN, after stating the case as above, delivered the opinion of the court.

Briefly outlined, the case as disclosed by the above statement is this: The certificate of stock in the Carey Manufacturing Company was placed in the possession of Holzman & Co. under an express agreement that it should not go out of their possession, but be held simply for the purpose of showing Fritz's financial responsibility; that Holzman & Co. had no authority to pledge the stock with the Unity Banking and Saving Company as security for the payment of their individual note for $10,000 to that institution; that the pledging of the stock with the bank by Holzman & Co. was without Fritz's knowledge; that his signature to the blank power of attorney was unauthorized by him and was a forgery: that Fritz did not, by anything said, done or omitted by him, lead the bank to believe that he had executed such power of attorney, or had authorized any one to do so for him; and that he never, in any way, ratified the forgery of his name or approved the pledging of the stock to the Unity Banking and Saving Company for the individual debt of Holzman & Co.

In view of these facts—which the Referee as well as the District and Circuit Courts of Appeals correctly held to have been established by the evidence—it would seem unnecessary to cite authorities to show that, as between the bank and Fritz, the bank did not acquire any interest, legal or equitable, in the stock represented by the certificate placed in the possession of Holzman & Co. under the circumstances stated. The bank no doubt relied upon the integrity of that firm, and acted in the belief that Fritz had in fact signed the blank power of attorney or authorized it be signed for him. But that belief was not, according to the evidence, superinduced by anything said, done or omitted by Fritz. He was not chargeable with laches or negligence. The bank having elected to rely upon Holzman & Co., must stand the consequences. It cannot say that it was misled by Fritz to its prejudice. It could not, therefore, as between itself and Fritz, take anything in virtue of the forgery. As against the true owner, a right of property cannot be acquired by means of a forged written instrument relating to such property. This is the general rule. An exception to the rule arises where the owner by laches, or by culpable, gross negligence, or by remaining silent when he should speak, has induced another, proceeding with reasonable caution, to act with reference to the property, in the belief that the instrument was genuine, or would be so recognized by the owner. In such cases the owner would be equitably estopped to rely upon the fact of forgery, as against the person who was misled by his conduct. There are no facts in this case from which could arise an exception to the general rule.

Nor, in view of the facts, need we follow the example of counsel and enter upon an examination of the cases bearing on the general inquiry as to the circumstances under which a broker who, by the act of the owner, comes into the lawful possession of a stock certificate—but, without the legal title having been transferred to him—may retain the certificate as security for any balance ascertained upon settlement due

him on account of dealings for or on behalf of such customer. We say this, because it appears, and it is so found, that at the close of the business transacted by Holzman & Co. for Fritz, the latter was a creditor, not a debtor, of that firm.

In any aspect in which the case can be properly viewed, and for the reasons stated, the judgment sustaining Fritz's claim to the stock and certificate in question must be

*Affirmed.*