## DUNAVANT et al. v. EVANS.

No. 29774. April 28, 1942.

Rehearing Denied June 2, 1942.
Application for Leave to File Second Petition for Rehearing Denied July 7, 1942

*127 P. 2d 190.*

Harry T. Twine, of Muskogee, for plaintiffs in error.

Kelley Brown and Richard B. Brown, of Muskogee, for defendant in error.

ARNOLD, J. On the 2nd day of July, 1938, plaintiffs, J. E. Dunavant and Ras Dunavant, filed an action against Phyllis Evans, John Evans, Jr., and Senova Evans to quiet title to certain premises described in a warranty deed purportedly executed by Phyllis Evans and John Evans, Jr., on September 5, 1923. On the 2nd day of August, 1938, Phyllis Evans filed answer and cross-petition denying the execution of this deed and setting up a claim of title in herself. This answer and cross-petition was not verified. On the 15th day of September, 1938, judgment was entered on the pleadings in favor of the plaintiffs and

against the defendants, Phyllis Evans, John Evans, Jr., and Senova Evans, wife of John Evans, Jr.

On the 8th day of February, 1939, the defendant Phyllis Evans, acting by and through her guardian, filed her petition to vacate the judgment and issued summons thereon. After a motion to dismiss the petition to vacate was overruled, plaintiffs filed an answer to the petition to vacate the judgment. In their reply the plaintiffs in effect plead laches and equitable estoppel and the statute of limitations. Issues being joined, the court proceeded to hear the petition to vacate, and at the conclusion of the hearing thereon the court caused to be entered a judgment dated September 20, 1939, in effect vacating the former judgment; and after further hearing on the merits entered judgment for the defendant Phyllis Evans, canceling the deed alleged to have been executed by her and quieting title in her. The court found that the deed as to Phyllis Evans was a forgery. Motion for a new trial was duly filed and overruled, and the original plaintiffs have perfected their appeal.

The parties will be referred to as they appeared in the original action, the defendant meaning Phyllis Evans and her duly appointed guardian in her representative capacity.

It is admitted that the defendant was incompetent and under guardianship at the time judgment of the 15th day of September, 1938, was rendered against her. Service of summons was had on Phyllis Evans in July, 1938; her guardian was appointed in August, 1938, but no summons was ever issued or served on the guardian; nor was a guardian ad litem ever appointed. By reason thereof the court was justified in vacating and setting aside said judgment. Wilson v. Ferguson, 84 Okla. 79, 202 P. 500; Blair v. Blair, 124 Okla. 128, 254 P. 38.

The 15-acre tract involved in this action was a part of the allotment of John Evans, Jr. During the latter part of his minority the plaintiffs leased this land from the guardian of the said John Evans, Jr. Within a short time after he reached his majority John Evans, Jr., together with his wife, Senova Evans, executed a warranty deed conveying said land to the defendant, his mother. This conveyance was made to the defendant without consideration. There is little question but that, although such land was conveyed to her and she held the legal title, she held same in trust for John Evans, Jr., an ignorant irresponsible colored boy. The deed was recorded immediately. Thereafter he demanded that the defendant reconvey the land to him in order that he might sell it. This she refused to do and he informed her that he would sell it anyway. On September 5, 1923, the plaintiffs, after the title was passed upon by an attorney, purchased the land from John Evans, Jr. A warranty deed, apparently executed by both the defendant and John Evans, Jr., was delivered to the plaintiffs in consideration of the sum of $1,700 which was paid to the said John Evans, Jr. This was vacant land; however, the plaintiffs went into possession as owners and have continued in possession thereof up to the present time, farming it, paying taxes on it, and in all respects exercising the rights of ownership. There is no evidence, however, that they made any improvements of a permanent or of a very valuable character.

The home of the defendant was located immediately across the road, and she and John Evans, Jr., have lived there continuously up to the present time. It is apparent from the record that she knew that the plaintiffs were in possession thereof claiming to be the owners. She at no time made any claim of ownership, paid no taxes, and made no attempt to collect any rental therefrom. The record does not disclose the amount of taxes paid or the reasonable rental value of the land. She and her family even asked permission of the plaintiffs to go upon the land and cut wood. She knew that her son had attempted to work out a sale of the land and that the plaintiffs had attempted to purchase same from him. She told her granddaughter that the title to the land could

be worked out after her death. She was declared incompetent in August, 1938. However, according to the evidence she was competent in 1923 and for a number of years thereafter. Even in 1938, when the plaintiffs attempted to get a quitclaim deed from her and when she was served with summons in this lawsuit, she seemed to know what was going on and she took the matter up with a lawyer, and he filed her answer. There is no question but that she is now old and more or less illiterate. However, there is nothing in the record which justifies her silence. With knowledge thereof she permitted the plaintiffs to remain in possession of the land, cultivate it and expend money thereon by paying the taxes, and at no time did she ever assert any claim thereto.

Generally, a mere delay in suing to recover possession of land purporting to be conveyed by a forged deed or in having the instrument set aside short of the time necessary to establish title in the grantee and those claiming through him by adverse possession does not affect the grantor's right to relief even as against an innocent purchaser from the purported grantee under a forged deed. 16 Am. Jur. § 28, p. 453. In this case the plaintiffs had claimed ownership and had been in possession for 14 years and 10 months, two months short of the time necessary to establish title by adverse possession. The question then presents itself as to whether by reason of her long silence and failure to assert her title the defendant is now equitably estopped from asserting same.

An equitable estoppel may arise under certain circumstances from silence or inaction and preclude a party from asserting legal title and rights of property. See Brusha et al. v. Board of Education, 41 Okla. 595, 139 P. 298, L. R. A. 1916C, 233; Heckman v. Davis, 56 Okla. 483, 155 P. 1170 (a forgery case); see note in 50 A.L.R. 780; 19 Am. Jur. § 65, p. 661. Also see Wampol v. Kountz et ux., 14 S. D. 334, 85 N. W. 595, 86 Am. St. Rep. 765, cited by us with approval in Brusha et al. v. Board of Education, supra, wherein the Supreme Court of South Dakota held:

"Parties who passively, willfully and knowingly suffer another to purchase unoccupied land and expend money thereon under an honest, though erroneous, belief, based on the county records, that his vendor's title is perfect, and that the deed under which the vendor claims is genuine and not a forgery, are estopped from asserting their title, as against the purchaser, after concealing their claim and the forgery for more than 13 years for the purpose of shielding the vendor from the consequences of his crime."

In the case of the Unity Banking & Savings Co. v. Bettman, 217 U. S. 127, 54 L. Ed. 695, 30 S. Ct. 488, the following rule is stated in the body of the opinion at page 135:

"As against the true owner, a right of property cannot be acquired by means of a forged written instrument relating to such property. This is the general rule. An exception to the rule arises where the owner by laches, or by culpable, gross negligence, or by remaining silent when he should speak, has induced another, proceeding with reasonable caution, to act with reference to the property in the belief that the instrument was genuine, or would be so recognized by the owner. In such cases the owner would be equitably estopped to rely upon the fact of forgery, as against the person who was misled by his conduct."

Of course, equitable estoppel, as well as the bar of laches, must be determined by the facts and circumstances in each case and according to right and justice. See Skinner v. Scott, 29 Okla. 364, 118 P. 394; Harjo v. Johnston, 187 Okla. 561, 104 P. 2d 985, and the many other cases.

Though the statute of limitations has not run, in an action of equitable cognizance facts may be shown which would impel a court of equity to determine that a party is precluded from asserting legal title. In Kenney et al. v. McKenzie, 25 S.D. 485, 127 N.W. 597, the court held:

"The statute of limitations and estoppel by laches are quite distinct, the statute being an arbitrary bar created by legislative enactment, while estoppel

arises from the conduct of the parties themselves. . . .

"Respondent also contends that the doctrine of equitable estoppel by laches cannot apply in this case 'because no statute of limitations has run and none has been pleaded, and the statutes of limitations are clearly binding upon actions at law and suits in equity.' We are not entirely clear as to what is meant by this statement. We agree with counsel that statutes of limitation prescribed by legislative enactment are applicable according to their appropriate period in bar of rights both legal and equitable. We agree, also, that estoppel by laches is a purely equitable doctrine. But the statute of limitations and the doctrine of equitable estoppel are quite distinct. The statute is an arbitrary bar created by legislative enactment, while equitable estoppel arises not from any statute, but from the acts and conduct of the parties themselves. An estoppel may arise from laches covering a period of time much shorter than that prescribed by statute. When the full period of statutory limitation has expired, no occasion exists to invoke the doctrine of laches, though it might still be available in any case where the statute of limitations has run."

In the case at bar it is apparent from the record that the plaintiffs proceeded with reasonable caution. On an attorney's recommendation a deed was taken from not only the record owner but also from the reputed owner, John Evans, Jr., from whose guardian the plaintiffs had formerly leased the land. This was presumably done on the theory that the defendant, the record owner, merely held the bare legal title, and that John Evans, Jr., was the actual owner; in other words, she held title to the land in trust for her son, John Evans, Jr. The plaintiffs paid a reasonable consideration for the land. As to the defendant the record discloses that the land was conveyed to her without consideration; that she had knowledge of the attempted sale of the land to the plaintiffs; that she lived directly across the road from the land and continued to live there during all the period involved herein; that she in no way questioned their ownership, paid no taxes, and made no effort to collect a rental

therefor, nor in any way made known any claim of ownership for 14 years and 10 months. From the record it can be reasonably assumed that defendant was protecting her son, John Evans, Jr., from the consequences of the forgery. The plaintiffs have been, and still are, in possession of the land; they have cultivated it and have paid the taxes thereon. The attorney who handled this transaction for the plaintiffs, examined the title, approved the deed in question, and advised the payment of the consideration therefor is now dead. By reason of the long lapse of time, the silence of the defendant and the death of at least one witness, the plaintiffs are probably deprived of the means of showing the true facts as to the original transaction and are by reason of all the foregoing facts now at a very great disadvantage, which might have been avoided by reasonably prompt action on the part of the defendant. We think, under all the circumstances in this case, by reason of the silence and inaction of the defendant, an equitable estoppel has arisen which precludes her from defending this action on the ground that the deed involved is a forgery, and from asserting title to the land.

The judgment is reversed and the cause remanded, with directions to enter judgment quieting the title in the land in the plaintiffs.

WELCH, C. J., CORN, V. C. J., and BAYLESS, HURST, and DAVISON, JJ., concur. RILEY, OSBORN, and GIBSON, JJ., dissent.

---

RILEY, J. (dissenting). J. E. Dunavant and Ras Dunavant sought in equity to quiet title as against John Evans, Jr., and his mother, Phyllis Evans, to 15 acres of land, which was a part of the allotment of John Evans, Jr. Plaintiffs relied upon a warranty deed to the land purportedly executed by Phyllis and John on September 5, 1923.

While John was a minor and owner of the land, plaintiffs had leased it. Subsequently, but prior to September 5, 1923, and after attaining his majority, John granted the land to his said

212

mother. Thereafter, John executed the deed granting the land to plaintiffs for the consideration of $1,700, and without authority he forged his mother's name to the deed.

The present action was commenced July 2, 1938; one month later Phyllis answered as aforesaid, alleged by way of cross-petition her title to the land based upon her recorded deed, and on September 15, 1938, judgment was rendered on the pleadings for plaintiffs. Thereafter, and on February 8, 1939, Phyllis, acting by her guardian, petitioned for vacation of the judgment, and plaintiffs answered. On September 20, 1939, the judgment was vacated and a new judgment was entered after a hearing favorable to Phyllis. Plaintiffs below appeal.

The petition of Phyllis to vacate the judgment alleged fraud by reason of the judgment being entered against her when she was incompetent and not represented in court by her guardian, regularly appointed. The fourth subdivision of section 556, O. S. 1931, 12 O. S. 1941 § 1031, specifically provides for vacation of judgments on the ground of fraud practiced by the successful party in securing judgments, and, without doubt, the act of taking a judgment against an incompetent person not represented by guardian constitutes a legal fraud.

Moreover, subdivision 5 of the same section authorizes vacation of proceedings against persons of unsound mind, such as Phyllis, who by records and evidence through her guardian proved herself to be incompetent at the time the judgment was entered. It therefore is mere surplusage to add that subdivision 7 of the same section provides for vacation of judgments where a party has been unavoidably prevented, through casualty or misfortune, from prosecuting or defending an action. Wilson v. Ferguson, 84 Okla. 79, 202 P. 500.

The only necessary issue on the hearing to vacate judgment was the unsoundness of mind of the movant, together with the slight irregularity of

plaintiffs' procedure against the incompetent without having served with summons her regularly appointed guardian so well known to plaintiffs. Roberts v. Hope, 39 Okla. 173, 134 P. 434; McNac v. Chapman, 101 Okla. 121, 223 P. 350; Blair v. Blair, 124 Okla. 128, 254 P. 38; Griffin v. Galbraith, 114 Okla. 208, 247 P. 339. In this the learned trial judge committed no error, and I agree with the majority opinion.

However, plaintiffs urge that judgment on the cross-petition of defendant was barred by the statute of limitations (sec. 101, O. S. 1931, subd. 3 (two years), 12 O. S. 1941 § 95; Mansfield, Brunson, Kemp & Ahrens v. King, 160 Okla. 243, 16 P. 2d 87), and that cross-petitioner, Phyllis, knew or should have known for more than two years last past that she was defrauded of her land for that she paid no taxes thereon and the occupants thereof, these plaintiffs, were collecting therefrom rents and profits. Wherefore, plaintiffs urge that estoppel runs against Phyllis's cross-action. It is hardly tenable that an incompetent knew or should have known anything. However, since the plaintiffs proved by the evidence of their witness, John Evans, Jr., that Phyllis did not execute their deed, and the evidence adduced by Phyllis aided in conclusively establishing the fact of a forgery, plaintiffs' case for equitable cognizance fails, but a court of equity, having acquired jurisdiction, retains it to afford complete relief to either party entitled thereto, whether that relief be at law or in equity. Equitably the plaintiffs have no further concern as to the person justly entitled to ownership of the land. They must recover, if at all, on the strength of their own title and not upon the weakness of that of their adversary.

Phyllis in the equitable action against her could present any good defense. Clark v. Duncanson, 79 Okla. 180, 192 P. 806, 16 A.L.R. 316; Muckenthaler et al. v. Noller et al., 104 Kan. 551, 180 P. 453; Williams v. Neely, 134 F. 1, 69 L.R.A. 232; Morrow v. Hanson, 9 Ga. 398, 54 Am. Dec. 346; State v. Ark. Brick & Manufacturing Co., 98 Ark. 125, 135 S. W. 843.

While it is urged in her behalf that a counterclaim is not barred until the original action against which the counterclaim stands is also barred (Scrivner v. McClelland, 75 Okla. 239, 182 P. 503; Mires v. Hogan, 79 Okla. 233, 192 P. 811; Cooper v. Gibson, 69 Okla. 105, 170 P. 220; Mowatt v. Shidler, 66 Okla. 303, 168 P. 1169; Advance Thresher Co. v. Doak, 36 Okla. 532, 129 P. 736; Stauffer v. Campbell, 30 Okla. 76, 118 P. 391; Richardson v. Penney, 10 Okla. 32, 61 P. 584; McClure v. Johnson, 10 Okla. 663, 65 P. 103; Theis v. Beaver, 22 Okla. 333, 97 P. 973) nevertheless, the decision on appeal need not turn upon that point, since recoupment is within the common-law right never intended to be impaired or abolished by adoption of the Code.

However ill it becomes plaintiffs to seek the quieting of their title to the property and deny the same right to defendant, it is certain that title claimed by forged deed, alone, may not be acquired under any doctrine of estoppel or laches, for against that the law stands. The law prescribes that title by prescription, based upon adverse holding for a period of 15 years, must be for that period of time, whereas in the cause at bar adverse possession of plaintiffs endured just two months short of that time. It is axiomatic that equity follows the law.

The majority opinion is predicated upon the issue of estoppel. Estoppel is an affirmative plea that must not only be pleaded but proved. In this case, though laches was pleaded, estoppel as such was not mentioned in the pleadings. There was no proof to sustain the plea. The facts consist of mere knowledge on the part of this old, deaf, incompetent negro woman, if knowledge may be attributed to such a person, that plaintiffs had use and occupancy of her real estate and paid taxes upon it. Presumably, use and occupancy were worth the taxes, and surely use and occupancy, short of the time fixed by the 15-year statute of limitations, are insufficient to sustain unpleaded estoppel.

The judgment should be affirmed.