In re Maxine BAXTER, through her Conservator, Melissa S. McNairy, Debtor.

Melissa S. McNairy, Conservator for Maxine Baxter, Plaintiff,

v.

Estate of Garret Baxter, et al., Defendants.

Bankruptcy No. 03–00269.
Adversary No. 03–10029.

United States Bankruptcy Court,
District of Columbia.

Oct. 6, 2004.

Karl W. Carter, Jr., Washington, DC, for Plaintiff.

Grady C. Frank, Jr., Rebecca E. Kuehn, LeClair Ryan, P.C., Alexandria, VA, for Wachovia Bank of Delaware, N.A. and EMC Mortgage Corporation.

L. Darren Goldberg, Draper & Goldberg, Leesburg, VA, for EMC Mortgage Corporation.

Paul J. Malone, Carr Maloney P.C., Washington, DC, for Home Owners Title Company and Stephen D. Ruben.

Cynthia A. Niklas, Washington, DC, Chapter 13 Trustee.

### DECISION RE MOTIONS FOR SUMMARY JUDGMENT

S. MARTIN TEEL, JR., Bankruptcy Judge.

Regarding the plaintiff's claims for negligence and fraud relating to a forged deed of trust against her property, the court will grant summary judgment pursuant to motions filed by defendants in this proceeding, one (Docket Entry ("DE") No. 48) filed by EMC Mortgage Corporation ("EMC") and Wachovia Bank of Delaware, N.A. ("Wachovia") and one (DE No. 50) filed by Home Owners Title Company ("Home Owners") and Stephen D. Ruben ("Ruben"). Regarding the plaintiff's claim to void the deed of trust as a forgery, the court will deny summary judgment to EMC and Wachovia, but will grant summary judgment to Home Owners and Ruben on the basis that the claim is not directed to them.

The plaintiff, as conservator, represents Maxine M. Baxter, and filed on her behalf the bankruptcy case within which this adversary proceeding has been pursued. The complaint seeks damages arising from Ms. Baxter's son's encumbering her home by use of a Limited Power of Attorney purporting to bear Ms. Baxter's notarized signature which was allegedly forged or otherwise invalid (based on Ms. Baxter's incompetence). Wachovia allegedly made the loan, and Home Owners, and its employee, Ruben, processed the settlement of the loan. EMC later purchased the loan.

The plaintiff has not shown that the movants were aware that the Limited Power of Attorney was forged or otherwise invalid, or that they were aware of any facts that should have put them to a duty to inquire behind the facially valid and notarized Limited Power of Attorney. The movants are thus entitled to summary judgment regarding the negligence and fraud claims asserted by the plaintiff.

If, as appears likely, the signature of Ms. Baxter on the Power of Attorney was forged, her son's execution of the deed of trust pursuant to the Power of Attorney is no better than if her signature had been directly forged on the deed of trust. Because a forged deed of trust is void, Wachovia and EMC as beneficiaries of the

deed of trust would not be secured by the deed of trust.

### I

The facts not genuinely in dispute (either based on the plaintiff's admissions of record, those statements of material facts not in dispute that the plaintiff has not challenged, or affidavit) are as follows.

### A.

Ms. Baxter has owned at all relevant times a real property known as 724 Crittenden Street, N.E., Washington, D.C.

On March 16, 1998, Ms. Baxter executed a General Power of Attorney appointing her son, Garret Baxter, as her attorney-in-fact. The plaintiff does not challenge the validity of this General Power of Attorney. Pursuant to D.C.Code Ann. § 42–101 (2001) (formerly § 45–601), a further power of attorney, containing language specified by that statute, was necessary to actually encumber the home. Nevertheless, the General Power of Attorney authorized Garret Baxter to borrow money on Ms. Baxter's behalf and to receive those funds.[1]

On November 3, 2000, Beville D. Randall, Sr., as a notary public in and for Prince George's County, Maryland, notarized a Limited Power of Attorney purporting to bear the signature of Maxine M. Baxter. The plaintiff has not alleged that Randall was affiliated with any of the defendants. The Limited Power of Attorney appointed Ms. Baxter's son, Garret Baxter, as her Attorney–in–Fact.

The Limited Power of Attorney was facially valid to permit Garret Baxter to take the steps he took. Regarding the instrument's facial validity, on the front page, in bold and capital letters, the Limited Power of Attorney provided:

**THIS POWER OF ATTORNEY AUTHORIZES THE PERSON NAMED BELOW AS MY ATTORNEY–IN–FACT TO DO ONE OR MORE OF THE FOLLOWING: TO PURCHASE, SELL, LEASE, GRANT, ENCUMBER, RELEASE OR OTHERWISE CONVEY ANY INTEREST IN MY REAL PROPERTY AND TO EXECUTE DEEDS AND ALL OTHER INSTRUMENTS ON MY BEHALF, UNLESS THIS POWER OF ATTORNEY IS OTHERWISE LIMITED HEREIN TO SPECIFIC REAL PROPERTY.**

It thereby fully complied with the requirement of § 42–101 regarding the necessity of a power of attorney for encumbering real property to include precisely that language.

The Limited Power of Attorney then listed the legal description of the subject property, as well as the street address by which it is known. The Limited Power of Attorney then recited that:

I, *MAXINE M. BAXTER*, have made ... *GARRET A. BAXTER, MY SON* as my true and lawful attorney-in-fact for me and in my name, place and stead, and for my use and benefit on the property aforementioned.

I specifically grant unto my attorney-in-fact the full power to execute any and all documents necessary to refinance

---

1. Specifically, by the General Power of Attorney Ms. Baxter authorized Garret Baxter, among other things, to receive any moneys to which she should become entitled; to mortgage or subject to deeds of trust her real property; to "conduct, engage in, and transact any and all lawful business of whatever nature or kind for me, on my behalf, and in my name;" and to do any and all things which he "may deem necessary for the proper management of my estate and property." The General Power of Attorney is thus germane to an issue in the main case of whether the claim may be allowed as an unsecured claim if it is not a secured claim.

and encumber the property known as *724 Crittenden Street, Washington, DC 20017* with the following terms.

Lender: First Union

Loan Amount: Ninety-nine Thousand Dollars ($99,000.00)

Interest Rate: 10.380%

Term: 30 Years—Fixed Rate (No Prepayment Penalty)

Approximate Monthly Payment: Eight Hundred Ninety-six Dollars and Seventy-two Cents ($896.72)

First Union National Bank, N.A., of Delaware was Wachovia's predecessor-in-interest and will thus be included in the use of the term Wachovia.

### B.

On November 13, 2000, Garret Baxter executed on behalf of Ms. Baxter as grantor a deed of trust, by signing "Maxine M. Baxter By P.O.A. Garret Baxter" on her behalf. The deed of trust recited that Baxter as grantor owed Monument Mortgage Corporation ("Monument"), beneficiary of the deed of trust, $99,000 pursuant to a promissory note of the same date.

The plaintiff alleges that Wachovia made the loan and then assigned the promissory note and deed of trust to Monument. The court will address the motion for summary judgment on that basis. There is no showing that Wachovia was aware of any facts putting it to a duty to inquire behind the facial validity of the Limited Power of Attorney.

The settlement of the loan was processed by Home Owners and its employee Ruben. Ruben, a notary public for the state of Maryland, verified and attested to the authenticity of the documents at settlement, as being true and authentic, and verified that Ms. Baxter appeared before him via her power of attorney and acknowledged that Ms. Baxter executed at

settlement the settlement documents via her power of attorney. The plaintiff does not allege that Ruben or Homeowners had any communications with or made any affirmative representations to anyone regarding the loan or documentation, apart from Ruben's written notarization of the closing documents.

Wachovia later caused Monument Mortgage Corp. to transfer the loan to Wachovia, after which Wachovia sold the loan to EMC Mortgage Corp. ("EMC"). EMC, whose rights derive from Wachovia, has joined in Wachovia's motion for summary judgment. Wachovia subsequently repurchased the loan from EMC.

### C.

The plaintiff has offered no expert testimony to the effect that the movants were negligent in relying on the facially valid Limited Power of Attorney, or proffered any facts that would have put the movants to a duty to inquire behind the facial validity of the Limited Power of Attorney. By affidavit, Arthur F. Konopka, an expert in real estate transactions, opines that:

- there is nothing on the face of Maxine Baxter's limited power of attorney that would reasonably raise suspicion or concerns regarding the validity of the document;

- a closing agent for a real estate transaction involving a loan with that property to serve as collateral for the repayment of the loan may reasonably rely on the authenticity and validity of a limited power of attorney such as the one executed by Maxine Baxter in that her signature is notarized;

- the purpose of the law of the District of Columbia and Maryland regarding the power and authority of Notaries Public is to provide assurance to third parties that documents appoint-

ing attorneys in fact are the valid and effective act of the principal;

- a closing agent in receipt of a notarized limited power of attorney such as the document executed by Maxine Baxter, when presented by the son of the party executing such power of attorney, is not on notice [of] any irregularity and has no duty to inquire further regarding the authenticity of the document;

- a closing agent in receipt of a notarized limited power of attorney such as the document executed by Maxine Baxter has no reason to suspect that the document is a forgery, nor any reason to refrain from fully relying upon such power of attorney as authorizing a loan with the referenced real estate as collateral for its repayment.

The plaintiff has not obtained the services of any expert witness for purposes of the trial of this proceeding.

## II

The movants are entitled to summary judgment regarding the plaintiff's negligence and fraud claims. No facts have been established to show fraud, and the negligence claims must fail because the movants relied on a facially valid notarized power of attorney, with no reason to question its genuineness.

2. Section 42–101(a) provides in relevant part:
    (a) A general or specific power of attorney executed by a person authorizing an attorney-in-fact to sell, grant, or release any interest in real property shall be executed in the same manner as a deed and shall be recorded with or prior to the deed executed pursuant to the power of attorney. . . .

3. Of the irrelevant provisions, § 42–101(b) provides that "[a] person with a general or

## A.

■ Randall's notarization of Ms. Baxter's execution and acknowledgment of the power of attorney was in proper form.

### 1. Requirement of Notarization of a Power of Attorney.

■ Under D.C.Code Ann. § 42–101(a) (2001 ed.), a power of attorney authorizing an attorney-in-fact to grant an interest in real property must be executed in the same manner as a deed.[2] To make a long story short, as relevant to the execution of a power of attorney, this means that the power of attorney has to be executed via an acknowledgment taken and certified by a notary public as provided by D.C.Code Ann. §§ 42–141 to 42–148 (2001 ed.).

To explain this conclusion at greater length requires an examination of several statutory provisions. D.C.Code Ann. § 42–401 (2001 ed.) gives effect, upon delivery, to a deed "executed and acknowledged and certified as provided in §§ 42–101, 42–121 to 42–123, 42–306, and 42–602." The cited provisions are irrelevant to the issue of how a power of attorney must be executed, acknowledged and certified, except for §§ 42–121 to 42–123.[3] Those latter provisions were repealed by the Uniform Law on Notarial Acts of 1990, D.C. Law 8–205, 37 DCR 1023 (Mar. 6, 1991), and replaced, pursuant to the same act, by D.C.Code Ann. §§ 42–141 to 42–148 (2001 ed.) which address the same

specific power of attorney executing a deed for another shall sign and acknowledge the deed as attorney-in-fact," and this is the part of § 42–101 to which § 42–401 obviously has reference; § 42–306 imposes a requirement that a deed be "signed and sealed" for certain estates to be created; and § 42–602 imposes requirements regarding the execution and acknowledgment of a deed of a corporation.

topics. Section 42–401 was not amended to replace its reference to repealed §§ 42–121 to 42–123 with a reference to the new §§ 42–141 to 42–148.

However, that was an obvious legislative oversight, and it is appropriate to treat new §§ 42–141 to 42–148 as the appropriate sections to which § 42–401 now refers in place of the repealed provisions. Accordingly, deeds must, pursuant to § 42–401, be executed and acknowledged and certified as provided in §§ 42–141 to 42–148. In turn, because § 42–101(a) requires that a power of attorney "shall be executed in the same manner as a deed," it follows that a power of attorney must be executed, acknowledged, and certified as provided in §§ 42–141 to 41–148.

### 2. The Limited Power of Attorney Was Properly Notarized.

■ Although §§ 42–141 to 41–148 do not expressly require that a deed be notarized by a notary public, that is obviously what was intended by their being referred to by § 42–401, as those provisions cover the topic of notarial acts relating to the execution, acknowledgment, and certification of papers. Section 42–141(a) defines "acknowledgment," as relevant to execution of a deed, as meaning a declaration by a person stating that the person has executed the deed for the purposes stated therein, and § 42–141(4) defines "notarial act" as including taking an acknowledgment. Finally, § 42–147(a) requires that "[a] notarial act shall be evidenced by a certificate signed and dated by a notarial officer...."

The Limited Power of Attorney here met the requirement of § 42–401 that it be executed and acknowledged and certified as provided by §§ 42–141 to 42–148. Under D.C.Code Ann. § 42–144(a)(1), a notarial act performed by a notary public in another state has the same effect as if the act had been performed by a notary public of the District of Columbia. Furthermore, under § 42–144(d), such a notary public's signature and indicated title of the notary public establishes conclusively the authority of the notary public to perform the notarial act.

Accordingly, Randall was authorized to notarize Ms. Baxter's signature of acknowledgment on the Limited Power of Attorney even though he is a Maryland notary public. The plaintiff has not contended that Randall's notarization, evidenced by his signed certificate at the foot of the instrument, failed in any way to comply with D.C.Code Ann. § 42–147 ("Certificate of notarial acts").

### B.

■ The issue is thus whether the movants were entitled to rely upon the Limited Power of Attorney if Ms. Baxter's signature was forged or was invalid due to incompetency. Assuming that the signature was forged or invalid due to incompetency, the plaintiff has not demonstrated anything giving rise to a duty to inquire behind the Limited Power of Attorney.[4]

The Limited Power of Attorney was facially valid. It complied verbatim with the requirement of § 42–101 regarding language required to make a power of attor-

---

**4.** The issue of whether the signature on the Limited Power of Attorney is forged or otherwise invalid is one for the finder of fact, and must await a trial. However, the court notes the following. A comparison of the signature purporting to be Ms. Baxter's on the Limited Power of Attorney, and the signature on the deed of trust reading "Maxine M. Baxter by P.O.A. Garret Baxter" suggests that the same person signed the words "Maxine M. Baxter" on both documents, particularly in light of the similar manner of signing the letter "x" in "Maxine M. Baxter." The signature of "Maxine M. Baxter" on the earlier General Power of Attorney does not appear to have been signed by the same person.

ney adequate to authorize a conveyance of an interest in real property, and, as discussed above, it was properly notarized in accordance with District of Columbia law.

The plaintiff has adduced no evidence that the movants were in any way on notice that there might be a problem with the facially valid Limited Power of Attorney. As Konopka's unrebutted affidavit establishes, there is nothing unreasonable in a closing attorney's relying on a power of attorney presented by a mother's son.[5]

■ A bank receiving a power of attorney is not required to go behind the power of attorney to assure that the transaction attempted pursuant to the power of attorney was indeed intended. *See Empire Trust Co. v. Cahan*, 274 U.S. 473, 47 S.Ct. 661, 71 L.Ed. 1158 (1927); *Crosby v. Loudoun Nat'l Bank*, 235 F.2d 540, 543 (4th Cir.1956); *Milner v. Milner*, 183 W.Va. 273, 395 S.E.2d 517, 521 (1990); *Heine v. Newman, Tannenbaum, Helpern, Syracuse & Hirschtritt*, 856 F.Supp. 190 (S.D.N.Y.1994), *aff'd*, 50 F.3d 2 (2d Cir. 1995); *Caldwell v. Hanes (In re Hanes)*, 214 B.R. 786, 825 (Bankr.E.D.Va.1997). That rule alone, however, does not suffice to protect the defendants from the claims of negligence asserted here, as the rule assumes the existence of an authentic power of attorney.

However, it makes sense that a negligence claim ought not lie against a lender and a closing attorney who, in good faith reliance upon a notarized power of attorney (unbeknownst to them to contain a forged signature of the donor of the power), permit a deed of trust executed by the purported attorney-in-fact to be recorded. After all, if the power of attorney is a forgery, the deed of trust is void, as discussed in part IV, below, and hence ineffective to withstand challenge to its being an encumbrance against the property purportedly encumbered. The only harm befalling the owner of the property is the necessity of a suit to clear her title from the invalid deed of trust. This may explain why the court has found no decisions addressing the issue of whether one who relied on a forged power of attorney in *recording a deed transferring an interest in real property of the purported donor of the power* can be held liable to the purported donor.

There are two conflicting decisions regarding whether one who relied on a forged power of attorney in *transferring the funds of the purported donor of the power* can be held liable to the purported donor. In one decision, good faith reliance on a notarized power of attorney was held to preclude submission to a jury of a damage claim based on good faith reliance on a forged power of attorney. In *Villanueva v. Brown*, 103 F.3d 1128 (3d Cir.1997), a corporation's lawyers holding funds of Ostroff disbursed those funds to the corporation pursuant to good faith reliance on a notarized power of attorney on which her accountant had forged her signature, but the claims against the lawyers were dismissed.[6] The court of appeals affirmed

---

**5.** Ruben and Homeowners contend that in the case of an attorney, such as Ruben, the standard of care must be established by expert testimony, citing *O'Neil v. Bergan*, 452 A.2d 337 (D.C.1982), and that the plaintiff's lack of expert testimony requires that her claims fail. I need not reach that argument (which would not apply to Wachovia, a non-attorney, in any event), because I conclude as a matter of law

that the movants were entitled to rely on the duly notarized power of attorney.

**6.** Ostroff sued the lawyers for releasing the funds from the trust account without Ostroff's authorization, alleging that this constituted conversion and a breach of: the escrow agreement, the fiduciary duty owed to Ostroff, and the lawyers' duty of good faith and loyalty. *Id.* at 1132. There was, however, no

the dismissal, placing heavy reliance on the notarization of the power of attorney. The court noted that "[t]he primary purpose of a power of attorney is . . . to provide third persons with evidence of agency authority." *Id.* at 1136 (citation omitted). It then stated:

> Here, [the accountant] presented [the lawyers] with a limited power of attorney, which contained a notarial seal. Ostroff thereby purported to appoint [the accountant] her agent, and appeared to give him the authority to authorize [the lawyers] to release the funds she had deposited with them.... [The accountant's] alleged forgery of the document does not support an inference that [the lawyers] were parties to any impropriety. They were entitled to conclude that they had been given the authority to make disbursements on behalf of Ostroff.

*Id.* The court of appeals noted that one presented with an instruction of an attorney-in-fact, authorized by a valid power of attorney, is not required to verify the instruction with the principal, otherwise "the authority given to attorneys-in-fact would be eviscerated." *Villanueva,* 103 F.3d at 1136, *quoting Heine,* 856 F.Supp. at 195. The court then held:

> We realize that here, unlike in *Heine,* the validity of the power of attorney is in question. However, since [the law-

yers] did not know that Ostroff's signature was a forgery that distinction is of no consequence. If Ostroff was a victim of a fraud, she was a victim of [the accountant] and or [the corporation's developer's] fraud, and not one perpetrated by [the lawyers].

*Villanueva,* 103 F.3d at 1137. Under *Villanueva,* the negligence and fraud claims here would fail.

However, in *Whyte v. Citicorp Savings (In re Estate of Davis),* 260 Ill.App.3d 525, 198 Ill.Dec. 5, 632 N.E.2d 64 (1994), a bank was subjected to liability despite having relied in good faith on a facially valid power of attorney notarized by a notary public, and on a statute authorizing banks to take actions in good faith reliance on a power of attorney creating an agency. The liability was for having transferred the plaintiff's funds to the presenter of forged powers of attorney forms. Because the powers of attorney were forged, they did not create an agency relationship behind which the bank was not required to inquire.

*Villanueva* and *Whyte* appear to be irreconcilable with respect to the issue of whether good faith reliance on a forged power of attorney shields a defendant from negligence claims.[7] Nevertheless, I readily conclude that no negligence claim exists here because we are not dealing with de-

---

allegation that the lawyers knew of the alleged forgery or had any reason to suspect that the limited power of attorney was the product of a forgery or was otherwise invalid. *Id.* at 1133. Ostroff presented expert testimony that the lawyers had a duty to notify Ostroff that they had received the limited power of attorney from the accountant, and to notify her of disbursements pursuant to the same. *Id.* at 1134. Nevertheless, at the end of Ostroff's presentation of her case at trial, the district court dismissed the claims against the lawyers without allowing them to go to the jury. *Id.* at 1131.

7. The claims in *Whyte* included negligence, as well as breach of contractual and fiduciary duties. The claims in *Villanueva* included breach of the attorneys' professional duties to Ostroff (breach of fiduciary duties and of the duty of good faith and loyalty) and conversion. However, both decisions assume the existence of a duty of care, and address whether reliance on a power of attorney satisfies that duty. Certainly the duty of care required under negligence law would be no higher than the duty owed for breach of contractual or fiduciary duties or of an attorneys' professional duties.

posited moneys; instead, we are dealing with real estate which is going nowhere. Because an owner's interest in the real property remains protected by the rule that a forged deed is ineffective against the owner, I conclude that the standard of care is that no negligence is present when a closing attorney and a lender proceed to process and record a deed of trust in good faith reliance upon a duly notarized power of attorney with no circumstances having come to their attention that would raise questions as to the validity of the power of attorney. Summary judgment is thus appropriate in favor of the movants on the monetary claims against them for negligence and fraud.

### III

The parties' papers on the motions for summary judgment fail to address a curious issue presented by the pleadings, but the failure to resolve that issue does not alter the propriety of granting summary judgment. Wachovia's answer denied that it was the lender, alleging that the loan was to Monument. However, for purposes of moving for summary judgment, the movants acquiesce in treating Wachovia as having made the loan as alleged by the plaintiff. Even if Monument was the actual initial lender, the movants nevertheless are entitled to respond to the case as framed by the plaintiff's pleadings which treat Wachovia as the lender.[8]

Although the Limited Power of Attorney referred to a loan by First Union (now

Wachovia), the substitution of Monument for First Union has not been claimed as a basis for damages, in apparent recognition by the plaintiff that it could not be such. Once First Union made the loan, it could have immediately transferred the promissory note and deed of trust to Monument by pre-arrangement. In any event, the identity of the lender would arguably not be material as the loan terms were the same, and Baxter already had authority pursuant to the General Power of Attorney to borrow money on his mother's behalf. Accordingly, the closing attorney and Monument arguably could reasonably conclude that the substitution of Monument was consistent with the Limited Power of Attorney and, in any event, the plaintiff has not articulated any harm arising from the substitution.[9]

### IV

■ Because the property here is real property located in the District of Columbia, the issue of whether the deed of trust shall be given effect is governed by District of Columbia law. As stated in *M.M. & G., Inc. v. Jackson,* 612 A.2d 186, 191 (D.D.C.1992):

It is well settled that a forged deed cannot validly transfer property and that even a bona fide purchaser takes nothing from that conveyance. *Unity Banking & Saving Co. v. Bettman,* 217 U.S. 127, 135, 30 S.Ct. 488, 489–90, 54 L.Ed. 695 (1910); *Harding v. Ja Laur Corp.,* 20 Md.App. 209, 315 A.2d 132, 135–36 (Md.1974).

---

8. It is possible that Wachovia was the lender but that at the closing table it assigned its rights to Monument by having the promissory note and deed of trust list Monument as the entity to whom the lent funds were to be treated as owed. Alternatively, it is possible that Wachovia handled the making of the loan, but that Monument was the actual source of funds and thus the initial lender. Finally, it is possible that Monument both

handled the making of the loan and made the loan.

9. Although Monument was listed as a defendant, the plaintiff has never sought a default judgment against Monument Mortgage Corporation. Nor has the plaintiff shown that the outcome as to Monument ought somehow be different than the outcome as to Wachovia.

*Unity Banking*, relied upon by the court in *M.M. & G.*, involved facts remarkably similar to this case. There, Fritz deposited a certificate of stock with Holzman & Company. In turn, that company, without Fritz's authorization, pledged the stock with Unity Banking & Saving Company, to secure Holzman & Company's debt to that bank, and in so doing pinned to the stock certificate a blank power of attorney purporting to have been signed by Fritz on a stated date, with Fritz's signature purportedly attested to by Ross Holzman. Fritz's signature on the power of attorney was a forgery, and he had not authorized the signature. The Court stated:

> The bank no doubt … acted in the belief that Fritz had in fact signed the blank power of attorney or authorized it to be signed for him. But that belief was not, according to the evidence, superinduced by anything said, done, or omitted by Fritz. He was not chargeable with laches or negligence. It could not, therefore, as between itself and Fritz, take anything in virtue of the forgery. As against the true owner, a right of property cannot be acquired by means of a forged written instrument relating to such property.

*Unity Banking*, 217 U.S. at 135, 30 S.Ct. 488.

■ As in *Unity Banking*, if the Limited Power of Attorney was a forgery, the deed of trust executed pursuant to the Limited Power of Attorney is ineffective. A deed cannot be deemed valid based on a power of attorney that itself is a nullity.

Wachovia and EMC have urged the court to uphold the deed of trust because otherwise lenders will have to go behind powers of attorney to make sure that they are in fact executed by the person who the notary public says appeared before him and signed the instrument. The court must reject this argument. As between the lender and the person whose signature is forged, the lender is the one taking the business risk that the notary public has acted improperly (or the risk that the notary public has himself been defrauded by, for example, presentation by the forger of fake identification documentation). The person whose signature is forged is an innocent party, and ought not have the deed of trust given effect (unless she falls within an exception to the general rule of *Unity Banking* because, for example, she in some way contributed to the perpetration of the fraud or can be deemed to have ratified it through laches).

**V**

The court will grant summary judgment in favor of Ruben and Home Owners dismissing this adversary proceeding as to them. The court will grant partial summary judgment in favor of Wachovia and EMC, dismissing the fraud and negligence claims against them. Pursuant to F.R. Civ. P. 54(b), the court expressly determines that there is no just reason for delay and expressly directs the clerk to enter as a final judgment the order granting dismissal of the proceeding as to Ruben and Home Owners and granting dismissal of the fraud and negligence claims against Wachovia and EMC. The claims that remain to be tried are the claim seeking to declare the deed of trust void, and the claims against the defendants other than EMC, Wachovia, Home Owners, and Ruben.