Georg H.G. **HEINE** and Chrisal Investments, Ltd., Plaintiffs,

v.

**NEWMAN, TANNENBAUM, HELPERN, SYRACUSE & HIRSCHTRITT,** Defendants.

**No. 91 Civ. 2904 (PKL).**

United States District Court, S.D. New York.

June 27, 1994.

Stults Balner Horton & Slotnik, P.C., New York City (Louis Lauer, of counsel), for plaintiff.

Wilson Elser Moskowitz Edelman & Dicker, New York City (Edward A. Taylor, Marshal S. Endick, of counsel), for defendant.

## OPINION AND ORDER

LEISURE, District Judge:

This is an action for legal malpractice, with jurisdiction based on diversity of citizenship.

This case was originally filed on April 29, 1991, by plaintiffs, Chrisal Investments Ltd. and Georg H.G. Heine (collectively "Heine"), against defendants: Alvin Ashley ("Ashley"); Colton, Hartnick, Yamin & Sheresky ("Colton Hartnick"); and Newman, Tannenbaum, Helpern, Syracuse & Hirschtritt ("Newman Tannenbaum"). On September 24, 1991, defendant Ashley pleaded guilty to five counts of grand larceny in the Supreme Court of the State of New York, New York County ("state court"). On February 6, 1992, Ashley confessed judgment in favor of Heine in the amount of $1,539,345. *See* Affidavit of Confession of Judgment, sworn to on February 6, 1992. On February 20, 1992, judgment was entered against Ashley, *see* Judgment against Alvin Ashley, dated February 20, 1992, and filed on the same date in state court.

Plaintiff's Second Amended Complaint ("Complaint") which was filed on September 23, 1992, alleged 13 causes of action against the remaining defendants. Only the thirteenth cause of action named defendants Newman Tannenbaum. On December 28, 1993, a stipulation of discontinuance was entered into by the parties, and "So Ordered" by this Court, discontinuing the action as against defendants Colton Hartnick, thus leaving Newman Tannenbaum as the only remaining defendants, with only one cause of action, that being the thirteenth, asserted against them.

Now, defendants Newman Tannenbaum move this Court for an order, pursuant to Fed.R.Civ.P. 12(b)(6), dismissing the remaining cause of action. For the reasons, set forth below, the motion is hereby granted and the action is dismissed.

## Background

For the purposes of this motion to dismiss, the factual allegations in the Complaint are assumed to be true. A Rule 12(b)(6) motion, requires a court to construe any well-pleaded factual allegations in the complaint in favor of the plaintiff. *Gagliaridi v. Village of Pawling*, 18 F.3d 188, 191 (2d Cir.1994); *See Allen v. WestPoint–Pepperell, Inc.*, 945 F.2d 40, 44 (2d Cir.1991). However, the Court need not defer to legal conclusions

asserted in the Complaint. *See United States v. Bonanno Organized Crime Family,* 879 F.2d 20, 27 (2d Cir.1989) ("the district court was constrained to accept the complaint's allegations as true but only to the extent that they were factual"); *McCoy v. Goldberg,* 748 F.Supp. 146, 153 (S.D.N.Y. 1990) ("[w]hile the court [must] accept as true the allegations of the complaint ... such deference must only be paid to factual allegations and not to legal conclusions") (citing *O'Brien v. National Property Analysts Partners,* 719 F.Supp. 222, 229 (S.D.N.Y.1989) (Leisure, J.)).

A more complete discussion of the facts was previously set forth by this Court in *Heine v. Colton, Hartnick, Yamin & Sheresky,* 786 F.Supp. 360 (S.D.N.Y.1992). Accordingly, the facts will not be repeated at length herein, other than those necessary for discussion of the instant motion.

This action has its roots in the activities of Alvin Ashley, a former partner in the Colton Hartnick law firm. Between 1986 and 1990, Ashley allegedly induced Heine to make payments to him aggregating approximately $2,322,309.20. These payments were purportedly for investments in real estate and fast food ventures. In April 1991, Heine commenced the instant action, seeking recovery for over $1.5 million in losses allegedly suffered through Ashley's fraudulent deals, including alleged improprieties in the purchase and sale of a condominium in the Cityspire Building, located at 150 West 56th Street, New York, New York ("Cityspire condominium"). The sole remaining cause of action is brought against Newman Tannenbaum for their role in the sale of the Cityspire condominium.

## I. The Cityspire Real Estate Transaction

In December 1988, Heine engaged Colton Hartnick to represent him in the purchase of the Cityspire condominium, the closing of which was held in February 1989. At the beginning of 1990, Heine decided to sell the Cityspire condominium, and turned to Ash-

ley, a partner at Colton Hartnick, for assistance. Complaint at ¶ 139. On March 2, 1990, Ashley informed Heine that a purchaser had been located. On or about March 19, 1990, Heine executed a power of attorney, giving Ashley the power to "take all steps" necessary to execute the sale of the condominium. *Id.* at ¶ 139, 148–149. Pursuant to this power of attorney, Ashley retained Newman Tannenbaum to represent Heine and to handle the closing. *Id.* at 155–156. At the closing, Ashley served as Heine's attorney-in-fact, and Newman Tannenbaum acted as Heine's attorney in connection with the sale of the condominium. *Id.* at ¶ 173.[1] *Id.* The closing on the sale took place on July 12, 1990. After expenses, the proceeds of the sale were $181,248.89. In accordance with the specific instructions given to Newman Tannenbaum by Ashley, *id.* at ¶ 254, the funds were disbursed in five checks, one check payable to Heine in the amount of $9,702.62, and four checks payable to Ashley for the remainder of the proceeds. *Id.* at ¶ 173. Thereafter, Ashley misappropriated the proceeds of the sale, including the check issued to Heine, and failed to turn over these funds to Heine.

The cause of action alleged against Newman Tannenbaum is based on plaintiffs' assertion that despite Heine's execution of the power of attorney, Newman Tannenbaum breached their duty of care and thus committed malpractice by complying with Ashley's instructions and by permitting the checks to be drawn payable to and delivered to Ashley without first communicating with Heine, and by not determining whether Heine received the proceeds or a closing binder from the sale. *Id.* at ¶ 253–55. Additionally, the complaint alleges that because a partner at Newman Tannenbaum was Ashley's brother-in-law, a special duty was owed to Heine. *Id.*

## II. Prior Opinion in this Action on a Motion to Dismiss Pursuant to Federal Rule 12(b)(6)

In an Opinion and Order issued March 9, 1992, this Court dismissed Heine's cause of

---

1. On or about April 10, 1990, Ashley, as Heine's attorney-in-fact, executed a contract of sale with Keiko Nakayma and Kyochi Mizazoki. Section 9.1 of the contract provides that the "name and address of the Seller's present attorney is New-man Tannenbaum Helpern Syracuse & Hirschtritt. Alvin Ashley signed the contract of sale on the line designated for the seller as follows: Georg Heine by Alvin Ashley attorney in fact. Complaint at Exhibit A.

action against Newman Tannenbaum for failure to state a valid cause of action for legal malpractice. *Heine v. Colton Hartnick Yamin & Sheresky,* 786 F.Supp. 360 (S.D.N.Y. 1992) (Leisure, J.). In the March 9, 1992 Opinion, this Court stated, "[g]iven that Ashley was serving as Heine's alter ego pursuant to the power of attorney, the Court views Heine's claim that Ashley was not empowered to accept payment under the contract of sale with skepticism." *Id.* at 375.

However, this Court dismissed Heine's claim against Newman Tannenbaum based on two fundamental procedural defects. Firstly, that the contract of sale, on which Heine's claim was based, was not attached to the complaint, nor was it incorporated by reference. *Id.* Secondly, Heine endeavored to argue in his opposition papers that his malpractice cause of action was based on the theory that Newman Tannenbaum's actions were contrary to the customary practice of New York real estate transactions, however, such allegations were not contained in the original complaint. *Id.* Accordingly, this Court dismissed Heine's claim against Newman Tannenbaum.

Subsequently, Heine amended the complaint twice, in order to address the aforementioned defects. More specifically, the second amended complaint describes the sales contract, *see* Complaint at ¶ 156, and attaches the sales contract as an exhibit. *See Id.* at Exhibit A.[2] Additionally, the Second Amended Complaint alleges, in paragraph 157, on information and belief, the customary New York real estate practices.[3] Notwithstanding the additions, defendants have again moved to dismiss the cause of action for failure to state a claim.

**2.** Heine's cause of action is based in part on Section 3.2 of the contract which states the following:

> Form of Payment. Unless otherwise agreed to in writing by the Seller or the Seller's attorney: (1) payment shall be made ... (b) by check drawn by the buyer, ... and (2) any check shall be either (a) payable to the order of the Seller or (b) only if the Buyer is one or more individuals, payable to the order of the Buyer and endorsed to the order of the Seller or the Seller's attorney ...

## Discussion

### I. *Applicable Standard for a Motion to Dismiss Pursuant to Federal Rule 12(b)(6)*

Defendants have moved for an order dismissing plaintiff's claim pursuant to Fed. R.Civ.P. 12(b)(6). In deciding defendants' motion, this Court must apply "the familiar standard for review of a Rule 12(b)(6) motion, which requires a court to construe any well-pleaded factual allegations in the complaint in favor of the plaintiff and dismiss the complaint only if 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Gagliaridi v. Village of Pawling,* 18 F.3d 188, 191 (2d Cir.1994) (quoting *Allen v. WestPoint–Pepperell, Inc.,* 945 F.2d 40, 44 (2d Cir.1991) (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957))).

"The court's function on a Rule 12(b)(6) motion is not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." *Festa v. Local 3 International Brotherhood of Electrical Workers,* 905 F.2d 35, 37 (2d Cir.1990). Thus, a motion to dismiss must be denied "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974) (citing *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957)). "When determining the sufficiency of plaintiffs' claim for Rule 12(b)(6) purposes, consideration is limited to the factual allegations in plaintiff's complaint, which are accepted as true, to documents attached to the complaint as an exhibit or incorporated in it by reference, to matters of

Complaint at Exhibit A § 3.2.

**3.** Heine alleges, on information and belief, the real estate practices in New York are as follows:

> checks in payment of the net proceeds of the sale to be payable (a) to the order of the Seller; or (b) to the order of the seller's attorney-in-fact, as attorney; or (c) in accordance with the written instructions from the seller, and, in the absence of written instructions from the seller, not to the seller's attorney in fact personally.
> Complaint at ¶ 157.

which judicial notice may be taken, or to documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Brass v. American Film Technologies, Inc.*, 987 F.2d 142, 150 (2d Cir.1993) (citing *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47–48 (2d Cir.1991), cert. denied, —— U.S. ——, 112 S.Ct. 1561, 118 L.Ed.2d 208 (1992)).

## II. *Defendants' Motion to Dismiss the Thirteenth Cause of Action*

Heine's cause of action is based on the contention that Newman Tannenbaum was negligent in following the instructions of Ashley that deviated from the terms of the contract and the custom of the trade.

As this Court has previously stated, " '[a]n attorney-in-fact is essentially an alter ego of the principal and is authorized to act with respect to any and all matters on behalf of the principal with the exception of those acts which, by their nature, by public policy, or by contract require personal performance.' " *Heine v. Colton Hartnick Yamin & Sheresky*, 786 F.Supp. at 374 (quoting *Zaubler v. Picone*, 100 A.D.2d 620, 621, 473 N.Y.S.2d 580, 582 (2d Dept.1984)).[4] Under New York law, "[p]ursuant to a power of attorney, the attorney-in-fact is empowered to take any and all acts 'as fully as the principal might or could do.' " *Id.* (quoting *Romero v. Sjoberg*, 5 N.Y.2d 518, 523, 186 N.Y.S.2d 246, 249, 158 N.E.2d 828, 830 (1959)). *See Rosenberg v. Suares*, 432 N.Y.S.2d 620, 621, 105 Misc.2d 611, 612 (Sup.Ct.N.Y.Co.1980) (a general power of attorney "authorizes its holder to do almost any act the grantor can do").

The broad authority given through the power of attorney is codified in New York General Obligations Law sections 5–1501 through 5–1602 which specifically grants attorneys-in-fact broad authority, more authority than a mere agent. *See Rosenberg*, 432 N.Y.S.2d at 621. This broad authority is exemplified by Section 5–1501 which contains a model short form for granting a general power of attorney. The model form begins with the following statement: "[n]otice: The powers granted by this document are broad and sweeping." N.Y.G.O.L. § 5–1501.[5] Accord *Rohrbacher v. BancOhio Nat'l Bank*, 171 A.D.2d 533, 567 N.Y.S.2d 431, 433 (1st Dept.1991) (power of attorney vested attorney-in-fact with power to endorse check, giving bank power to rely on endorsement, even though attorney-in-fact later converted funds).[6]

It is undisputed that Heine executed a power of attorney, in favor of Ashley, giving Ashley the power to "take all steps and execute any and all documents in connection with the sale of the condominium." Complaint at ¶ 148–149. Accordingly, Ashley was acting as Heine's alter-ego. *See Heine*, 786 F.Supp. at 375.

Heine contends that Newman Tannenbaum's reliance on the specific instructions given by Ashley, that four of the five checks be made payable to Ashley, and that all five checks should be delivered to Ashley, constituted negligence, thus supporting a claim for malpractice.

It is well settled that an action sounding in legal malpractice requires· the showing of, *inter alia*, the negligence of the attorney. *Lauer v. Rapp*, 190 A.D.2d 778, 593 N.Y.S.2d 843, 844 (2d Dep't 1993). This Court has held: "[i]f an attorney *negligently* or *willfully* withholds from his client information material to the client's decision to pursue a

---

4. Acts which require personal performance are those acts that center. around areas of personal concern such as marriage or divorce. *See Mallory v. Mallory*, 450 N.Y.S.2d 272, 274, 113 Misc.2d 912, 915 (Sup.Ct.Nassau Co.1982) (stating that a "principal might very well be bound by acts of agent if agent were to purchase a car on behalf of the principal ... or sell certain goods ... such is not the case where an agent seeks to obtain a divorce," which is an area of extreme personal concern, and not a commonplace affair of the marketplace).

5. The broad scope of powers conferred by the power of attorney is exemplified by N.Y.G.O.L. § 5–1502 which authorizes an attorney in fact to *inter alia*, "hire ... any attorney, ... [and] to receive ... any money ... to which the principal is, or may become ... entitled." N.Y.G.O.L. § 5–1502.

6. *See also Rosenberg*, 432 N.Y.S.2d at 621 (under N.Y. General Obligations Law attorney-in-fact may bring a summary proceeding to recover possession of real estate while a simple agent is precluded from doing so).

given course of action, or to abstain therefrom, then the attorney is liable for the client's losses suffered as a result of the action taken without benefit of the undisclosed material facts." *DuPont v. Brady,* 646 F.Supp. 1067, 1075 (S.D.N.Y.1986) (emphasis added) (citing *Spector v. Mermelstein,* 361 F.Supp. 30, 39–40 (S.D.N.Y.1972), *aff'd,* 485 F.2d 474 (2d Cir.1973)), rev'd on other grounds, 828 F.2d 75 (2d Cir.1987).

In addressing the issue of attorney malpractice, the Restatement Second of Torts requires attorneys to act with the skill and knowledge normally possessed by members of the profession, with their performance measured against what is ordinary or reasonable in the professional. *See* Mallen and Smith, *Legal Malpractice,* 3d ed., § 15.3 (1989) (citing, Restatement Second Torts, § 299A). "[I]t is an elementary proposition that an attorney, by accepting employment to give legal advice or to render legal services, impliedly agrees to use *ordinary* judgment, care, skill and diligence." *Gillaizeau v. Mitchelson,* 1985 WL 1687 *1 (S.D.N.Y.) (Keenan, J.) (emphasis added) (citing, *Banerian v. O'Malley,* 42 Cal.App.3d 604, 116 Cal.Rptr. 919, 924 (1974)).

■ Heine's cause of action rests on the contention that Newman Tannenbaum had a duty to report to Heine, and receive approval directly from Heine. This Court finds, however, that Newman Tannenbaum was not negligent in relying on the statements made by Ashley, and finds that Newman Tannenbaum had a right to rely on the representations made by Ashley, and, in so doing, acted with reasonable skill and care.

■ At the closing, the signature line marked "The Seller," was signed "Georg Heine by Alvin Ashley, Attorney-in-fact." Complaint at Exhibit A. Thus, it was clear to all involved in the transaction that Ashley possessed actual authority to act on Heine's behalf, and was acting as Heine's alter-ego. The specific words of the contract of sale which was a contract between the seller and the buyer, did not alter the relationship between Ashley and Heine. The fact that the contract language and the customary practice of New York indicate that payments were to be made to the "seller" is not suffi-

cient to support a claim that Newman Tannenbaum acted negligently, since Ashley, as Heine's attorney-in-fact alter-ego, stood in the shoes of Heine, and for all intents and purposes was the "seller" at the closing. In this regard, both the contract and the rider to the contract which were to be signed by the seller, were signed by Ashley.

Furthermore, there is nothing about the contract of sale, which was a generic contract entitled "Contract of Sale of Residential Condominium," with a number of provisions crossed out, and additional provisions typed on, which would have lead Newman Tannenbaum, using ordinary skill and care, to the conclusion that the payments could not be made payable to Ashley, or delivered to Ashley as the seller's alter-ego.

If parties were required to verify with the principal each instruction given to them by an attorney-in-fact, the authority given to attorneys-in-fact would be eviscerated. No party to a transaction would rely on the statements of attorneys-in-fact without independent verification from the principal, and, accordingly, an attorney-in-fact would not be authorized to take any and all acts as fully as the principal. *See Parr v. Reiner,* 532 N.Y.S.2d 574, 575, 143 A.D.2d 427, 429 (2d Dep't 1988) (finding mortgagee was entitled to rely on power of attorney, even though the power of attorney was revoked, since mortgagee lack actual notice or knowledge of the revocation). If a principal were permitted, at a future point in time, to decide that a particular instruction should have been verified, parties to a contract could not and would not be able to rely on the statements or instructions of attorneys-in-fact.

The Second Circuit has stated that there is an "established rule that a principal is liable to third parties for the acts of an agent operating within the scope of his real or apparent authority ... [and that] a principal is liable for an agent's fraud though the agent acts solely to benefit himself, if the agent acts with apparent authority." *Citibank, N.A. v. Nyland (CF8) Ltd.,* 878 F.2d 620, 624 (2d Cir.1989) (citations omitted). *Accord Security Pacific Mortgage v. Herald Center Ltd.,* 891 F.2d 447, 448 (2d Cir.1989).

In the instant case, Heine was the victim of his own agent's fraud, and, accordingly, under the circumstances of this case cannot hold Newman Tannenbaum liable. It would be untenable if Heine were permitted to give Ashley a power of attorney, and then when that power is misused, contend that other parties were negligent in relying on it.

 Finally, Heine advances the contention that because a named partner at Newman Tannenbaum was Ashley's brother-in-law, Newman Tannenbaum owed Heine the firm's undivided loyalty and independent professional judgment. Complaint at ¶ 255. Based on the thorough discussion above, this Court finds that there is no indication that Newman Tannenbaum acted in any way other that with proper professional judgment. Furthermore, the attorney of record at the closing was Mark D. Kemp, Esq., *id.* at ¶ 173, who is not the attorney allegedly related to Ashley. There are no specific factual allegations in the complaint, other than the general assertions of negligence, where it is contended that Kemp conducted himself in any manner other than with the requisite loyalty and professionalism.

Based on the circumstances, this Court finds that Newman Tannenbaum's behavior was reasonable, that Newman Tannenbaum exercised ordinary and reasonable care, and did not breach their duty owed to Heine. Accordingly, this Court finds that the facts alleged in the complaint do not support a claim for relief against Newman Tannenbaum, and, therefore, the action is hereby dismissed.

## CONCLUSION

For the foregoing reasons, defendants Newman Tannenbaum's motion is granted. The Court hereby dismisses the cause of action interposed against Newman Tannenbaum, and the action is hereby dismissed.

**SO ORDERED.**