JOURNAL ENTRY AND OPINION
{¶ 1} Plaintiffs-appellants, A.G. Financial, Inc., Andrew LaSalla, and Gary LaSalla, appeal from the judgment of the Cuyahoga County Common Pleas Court denying their motion for partial summary judgment against defendants-appellants, Douglas A. DiPalma, Esq., Mark A. Trubiano, Esq., and their law firm Cavitch, Familo, Durkin Frutkin Co., L.P.A. (the "Cavitch Defendants"). The Cavitch Defendants cross-appeal from the trial court's denial of their motion to dismiss counts eleven and twelve of appellants' complaint and motion to strike. Finding no merit to appellants' appeal, we affirm.
 {¶ 2} In December 2000, appellants filed a complaint against David LaSalla, Andy and Gary LaSalla's older brother, regarding several business ventures, including a now defunct mortgage brokerage business known as Diamond Financial. David LaSalla subsequently filed for bankruptcy and the case was stayed as to him.
 {¶ 3} In their complaint, appellants also named as defendants the Cavitch Defendants, who served as corporate counsel for Diamond Financial and also represented David LaSalla with respect to some of his other business ventures. As against the Cavitch Defendants, the complaint asserted claims for relief based upon professional negligence and alleged violations of the Ohio Corrupt Activities Act ("OCAA") and Racketeer Influenced Corrupt Organizations Act ("RICO").
 {¶ 4} Appellants subsequently filed a motion for partial summary judgment regarding their claims against the Cavitch Defendants, while the Cavitch Defendants filed their own motion for summary judgment. The trial court granted the Cavith Defendants' motion and denied appellants' motion. This appeal followed.[1]
 {¶ 5} Appellants raise three assignments of error, all of which assert that the trial court erred in granting the Cavitch Defendants' motion for summary judgment, and, accordingly, we consider them together.
 {¶ 6} The record reveals the following. In early 1995, David LaSalla approached Vincent Conforte with a proposal to open a mortgage brokerage business as equal partners. Conforte was responsible for forming the corporation, obtaining the required mortgage broker's license and other related activities. David LaSalla, an experienced mortgage broker, was responsible for managing and growing the business. After the Ohio Department of Commerce issued Diamond Financial a license to operate in November of 1995, the Cavitch Defendants were retained as corporate counsel. The firm was not involved with the day-to-day operations of Diamond Financial or its management, however.
 {¶ 7} Diamond Financial quickly expanded to include four offices throughout Ohio. Eventually, David hired Andy and Gary LaSalla to work at Diamond, with Gary acting as the manager of the main Cleveland office.
 {¶ 8} In 1998, Diamond Financial expressed an interest in expanding its business into neighboring states, and approached Mark Trubiano of the Cavitch law firm for advice on how to best proceed. Trubiano advised Diamond Financial that, for liability purposes, it would be advantageous to form separate legal entities. The names of the corporations eventually formed were Cross-Country Mortgage of Pennsylvania and Cross-Country Mortgage of Michigan.
 {¶ 9} In order to conduct business out-of-state, mortgage brokers' licenses needed to be obtained from the states of Pennsylvania and Michigan. Gary LaSalla was identified as the individual responsible for obtaining the necessary licenses. Although the out-of-state companies were formed for the benefit of Diamond Financial, Gary LaSalla was made the technical "owner" of Cross-County Mortgage for licensing purposes. Gary executed a power-of-attorney (which he now claims was forged) in favor of his brother David that was used by the Cavitch Defendants to assist with the licensing process.
 {¶ 10} Although Diamond Financial prospered, David LaSalla's relationship with Vincent Conforte eventually soured when disputes arose over compensation and management issues. LaSalla's negotiations with Conforte to buy out his interest were unsuccessful, and Conforte subsequently filed suit against the LaSalla brothers, Diamond Financial, and the Cross-Country Mortgage entities. This suit was quickly settled; however, Conforte filed a similar complaint several months later.
 {¶ 11} In August 1999, Andy and Gary LaSalla formed another mortgage brokerage business named A.G. Financial, Inc. ("A.G. Financial") to afford them a clean break from David and his troubles with Conforte. Due to a potential conflict of interest, the Cavitch Defendants did not enter into an attorney-client relationship with A.G. Financial.
 {¶ 12} The LaSalla brothers had a "falling out" in early 2000 and by the end of February 2000, David terminated Gary and Andy as employees of Diamond Financial. Shortly thereafter, Diamond Financial ceased operations when Conforte refused to renew the mortgage broker's license, thereby prohibiting Diamond Financial from continuing its business. This suit was filed several months later.
 ANDY LASALLA'S LEGAL MALPRACTICE CLAIM {¶ 13} The professional negligence claim asserted by Andy LaSalla against the Cavitch Defendants is separate and distinct from that asserted by Gary LaSalla or A.G. Financial. Andy's legal malpractice claim is based entirely on his involvement as a defendant in a collection action captioned Alside Supply Center v. Tailored Homes, LLC, et al.,
Summit Cty. Ct. of Common Pleas Case No. 99-05-1746.
 {¶ 14} In addition to Diamond Financial, David LaSalla formed and owned a now-defunct home improvement company known as Tailored Homes. On February 3, 1998, in order to obtain supplies for his home improvement company, David executed a credit application and personal guaranty with Alside Supply Center ("Alside") in Andy's name. David contends that he executed the documents with Andy's knowledge and permission. Andy, however, claims that his signature was forged.
 {¶ 15} Alside subsequently filed suit against Tailored Homes and Andy LaSalla seeking to collect an outstanding debt of $20,642.76. David LaSalla advised the Cavitch Defendants that they should represent all defendants and that he would pay the full amount of the claim, including any attorney fees incurred. The Cavitch Defendants then settled theAlside case at no cost to Andy LaSalla.
 {¶ 16} In his complaint, Andy alleged that the Cavitch Defendants were professionally negligent because they never consulted with him regarding their representation of him in the Alside matter and failed to investigate any defenses he might have had to the claim. Specifically, Andy alleged that "even the most cursory investigation [by the Cavitch Defendants] would have revealed that the guaranty was forged, which is a complete defense in such an action." He further alleged that he had a "flawless" credit rating prior to the entry of judgment against him in the Alside matter and that his credit was ruined as a result of the judgment.
 {¶ 17} Andy's professional negligence claim against the Cavitch Defendants fails as a matter of law, however. R.C. 2305.11 sets forth a one-year statute of limitations for legal malpractice claims. The one-year statutory period begins to run upon the termination of the attorney-client relationship or the "discovery" of the alleged malpractice, whichever occurs later. Zimmie v. Calfee, Halter Griswold (1984), 43 Ohio St.3d 54; Spencer v. McGill (1993)87 Ohio App.3d 267. The issue of when a malpractice action accrues is a question of law to be determined by the court. Whitaker v. Kear (1997),123 Ohio App.3d 413; Green v. Barrett (1995), 102 Ohio App.3d 525.
 {¶ 18} Andy testified in deposition that he learned of the Alside
judgment in September 1999, when he applied for an automobile loan. He testified further that upon learning of the judgment, he called Alside, which informed him that he should contact his attorney, Douglas DiPalma. According to Andy, "I knew something was going on `cause I never hired Doug DiPalma."
 {¶ 19} It is apparent from this testimony that Andy's legal malpractice claim accrued in September 1999, when he "discovered" that a judgment had been entered against him and that the Cavitch Defendants had represented him in the lawsuit. Because he did not file this action until December 7, 2000, his legal malpractice claims are time-barred.
 {¶ 20} Appellants' arguments to the contrary are without merit. Moreover, in light of direct evidence to the contrary, we are troubled by Andy LaSalla's continued assertion that his brother David forged his signature on the guaranty given to Alside. The record reflects that in December 1999, Andy LaSalla obtained an equity line of credit from Fifth-Third Bank. In a letter to Fifth-Third from Andy LaSalla dated December 2, 1999, Andy stated:
 {¶ 21} "I am sending this letter to address the law suit showing on my credit report for Alside against myself, Andrew F. LaSalla, II.
 {¶ 22} "* * *
 {¶ 23} "The reason for the lawsuit being placed is due to the factthat I helped a friend out by signing for construction material that heneeded for a contract job that he acquired. Unfortunately, he defaulted on the contract and then in turn did not have the fund[s] to pay for the materials he had already received. By the time I found out he had defaulted on the contract and did not get the money needed to pay off this debt Alside had placed a lien against me personally. (Emphasis added).
 {¶ 24} "As unfortunate as my error was in signing for a friend in need I do take responsibility for any debt in my name. Please know that I do pay all my debts and did honor my agreement with Allside." (Emphasis added).
 {¶ 25} Contrary to Andy's assertion that David forged his name on the guaranty, this letter of explanation can only be construed as an admission by Andy that he knowingly signed for the Alside construction materials. Significantly, the letter makes absolutely no mention of a "forgery" or other foul play by Andy's brother David.
 {¶ 26} The trial court did not err in granting summary judgment in favor of the Cavitch Defendants regarding Andy LaSalla's professional negligence/legal malpractice claim.
 GARY LASALLA'S LEGAL MALPRACTICE CLAIM {¶ 27} The essence of Gary LaSalla's legal malpractice claim is that the Cavitch Defendants, in concert with his brother David, improperly used his identity to create, license and operate the Cross-Country Mortgage entities. Specifically, Gary asserts that his brother David stole his identity by way of the forged power-ofattorney, which thereby allowed the Cavitch Defendants to create and license the Cross-Country entities in his name but without his knowledge.
 {¶ 28} Gary contends that the forged power-of-attorney created an attorney-client relationship between him and the Cavitch Defendants. According to Gary, "since virtually all of the unauthorized transactions involving Gary LaSalla's signature * * * were made in reliance on the power of attorney, the power of attorney is the operative document in defining the Cavitch Defendants' duty to Gary LaSalla with respect to each of the transactions."
 {¶ 29} Gary's legal malpractice claim against the Cavitch Defendants fails as a matter of law, however. In order to maintain a cause of action for legal malpractice, a plaintiff must establish the existence of an attorney-client relationship. Krahn v. Kinney (1989), 43 Ohio St.3d 103,105. It is well recognized that an attorney-client relationship is consensual in nature and dependent upon a mutual confidence and understanding between the attorney and client. Brown v. Johnstone
(1982), 5 Ohio App.3d 165. Here, Gary LaSalla admitted in deposition testimony that he never entered into an attorney-client relationship with the Cavitch Defendants. As a result, his claim for legal malpractice must fail as a matter of law.
 {¶ 30} Gary attempts to avoid this result, however, by claiming that the power-of-attorney in favor of his brother David created a fiduciary duty toward him by Cavitch Defendants. Appellant's argument is without merit. There is no question that David LaSalla, as the agent, owed Gary LaSalla, the principal, a fidiciary duty. Sayer v. Epler (1997),121 Ohio App.3d 329. There is, however, no legal basis to extend this duty to the Cavitch Defendants. Appellants have not cited any legal authority suggesting that an attorney who relies on an objectively valid power-of-attorney owes some kind of fiduciary duty to the principal. To impose a duty as suggested by appellants would destroy the commercial use of powers-of-attorney. As explained in Heine v. Newman, Tannenbaum,Helpern, Syracuse Hirschtritt (SDNY 1992), 856 F.Supp. 190, "if parties were required to verify with the principal each instruction given to them by an attorney-infact, the authority given to attorneys-in-fact would be eviscerated. No party to a transaction would rely on the statements of attorneys-in-fact without independent verification from the principal * * *."
 {¶ 31} Here, Gary LaSalla presented the Cavitch Defendants with a power-of-attorney that was notarized and contained two witness signatures. Indeed, the notary testified that she actually witnessed Gary LaSalla sign the power-of-attorney. Gary LaSalla worked for his brother David at Diamond Financial at the time, and there was no reason for the Cavitch Defendants to suspect foul play. Thus, the power-of-attorney cannot serve as a basis for any of Gary's claims against the Cavitch Defendants.
 {¶ 32} In short, Gary simply cannot rely on the power-ofattorney as a basis to pursue a claim against the Cavitch Defendants. Either the power-of-attorney was forged and used to steal his identity, in which case it could not create a legal duty on the part of the Cavitch Defendants, or, the power-of-attorney was genuine, in which case Gary's "stolen identity claim" fails as a matter of law. Appellants cannot have it both ways.
 {¶ 33} In addition to attempting to create a duty based upon the power-of-attorney, Gary argues that an attorney-client relationship existed between the Cavitch Defendants and the Cross-Country Mortgage entities, and that this duty extended to him personally because he was the sole member of those entities.
 {¶ 34} It is well recognized, however, that a corporation is a distinct legal entity, separate and apart from the natural individuals who form it. Janos v. Murduck (1996), 109 Ohio App.3d 583. The attorney for a corporation owes his duty to the corporation, not the individual shareholders. Hile v. Furmin, Sprague and Huffman (1991),71 Ohio App.3d 838. Here, the Cavitch Defendants acted as corporate counsel for Cross-Country Mortgage and any duty owed was to the company, not to Gary LaSalla.
 {¶ 35} Gary's arguments are an attempt to manufacture a professional relationship between him and the Cavitch Defendants where none existed. Accordingly, the trial court did not err in granting summary judgment in favor of the Cavitch Defendants.
 {¶ 36} Moreover, as with Andy's claim that his signature was forged on the Alside guaranty, we are troubled by Gary's continuing assertion that he knew nothing about the formation of the Cross-Country entities, in light of significant evidence to the contrary. Specifically, the record reflects that in September 1999, Gary represented to the Ohio Department of Commerce in his application for a mortgage broker's license for A.G. Financial that he was the "owner/president of Cross-Country Mortgage of Pennsylvania," responsible for the "day to day operations and managing" of the firm. Thus, contrary to his assertion that he knew nothing about the Cross-Country entities until early 2000, Gary was well aware of his ownership status and used that status to his advantage in creating A.G. Financial.
 {¶ 37} Finally, appellants argue that the trial court erred in granting summary judgment regarding Gary's legal malpractice claim because in doing so, it resolved all factual disputes in favor of the Cavitch Defendants. Our review of the parties' briefs in support of their respective motions for summary judgment, however, demonstrates that appellants' alleged factual disputes relate to collateral issues which are immaterial to the order granting summary judgment. It is well established that "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Ferguson v. Breeding (Aug. 25, 2000), Lawrence App. No. 99 CA 22, quoting Anderson v. Liberty Lobby, Inc. (1986), 477 U.S. 242, 248.
 {¶ 38} The trial court did not err in granting summary judgment to the Cavitch Defendants regarding Gary LaSalla's legal malpractice claims.
 A.G. FINANCIAL {¶ 39} The sole allegations against the Cavitch Defendants relative to A.G. Financial are contained in count five of the complaint. It is difficult, however, to ascertain the exact nature of the claim asserted on behalf of A.G. Financial. The few references to A.G. Financial in appellants' brief seem to indicate that A.G. Financial is asserting a claim for legal malpractice. Count five fails to allege, however, that the Cavitch Defendants breached a duty or that A.G. Financial sustained any damages as a result of the Cavitch Defendants' conduct, and, therefore, it is legally insufficient to establish a cause of action for legal malpractice. See Vahila v. Hall, 77 Ohio St.3d 421, 1997-Ohio-259.
 {¶ 40} Moreover, appellants produced no evidence that the Cavitch Defendants ever entered into an attorney-client relationship with A.G. Financial. The Articles of Incorporation for A.G. Financial were signed and filed by attorney Patrick Gallagher, who is not associated with the Cavitch Firm. Furthermore, it is undisputed that A.G. Financial never entered into a fee contract with the Cavitch Defendants, nor was it ever charged a fee. In short, the Cavitch Defendants did not provide any legal services to A.G. Financial and, therefore, A.G. Financial has no standing to pursue a claim for legal malpractice against the Cavitch Defendants. Accordingly, the trial court did not err in granting summary judgment in favor of the Cavitch Defendants with respect to A.G. Financial's claim.
 OCAA/RICO CLAIMS {¶ 41} In order to set forth a prima facie RICO cause of action, appellants must produce evidence establishing (1) conduct; (2) of an enterprise: (3) through a pattern; (4) of racketeering activity; (5) resulting in injury to the plaintiff. Sedima S.P.R.L. v. Imrex Co., Inc.
(1985), 473 U.S. 479. Ohio has largely adopted the standards set forth in federal law in evaluating RICO claims. See, e.g., U.S. Demolition Contracting, Inc. v. O'Rourke Const. Co. (1994), 94 Ohio App.3d 75, 84.
 {¶ 42} In this case, Andy and Gary LaSalla are attempting to hold the Cavitch Defendants liable for the alleged "criminal" acts of their brother David. Gary alleges that his identity was stolen and that the power-of-attorney was forged. Andy also alleges that David forged his name on a personal guarantee with Alside which ultimately resulted in litigation. They further allege that the Cavitch Defendants somehow conspired with David in this regard, thereby giving rise to their OCAA/RICO claims.
 {¶ 43} Appellants produced no evidence, however, that the Cavitch Defendants knew of, let alone participated in, the alleged forgeries or other bad acts. Instead, the evidence demonstrates that Gary LaSalla's power-of-attorney was objectively genuine as it was signed by two witnesses and a notary. Gary and David LaSalla were working closely together at Diamond Financial at the time, and the Cavitch Defendants had no reason to suspect foul play between the brothers.
 {¶ 44} Nor was there any reason for the Cavitch Defendants to suspect that Gary's identity had been "stolen." Even assuming, however, that Gary knew nothing about the Cross-Country entities, appellants produced no evidence that the Cavitch Defendants knew of or participated in this deception. Rather, the evidence demonstrates that the Cavitch Defendants copied Gary on numerous letters relating to the mortgage broker's licenses for these entities, and even called Gary's wife to discuss liability issues relating to Gary's involvement with the out-of-state companies. These acts are inconsistent with any alleged criminal conspiracy and, therefore, Gary's OCAA/RICO claim is without merit as a matter of law.
 {¶ 45} Andy's OCAA/RICO claim also fails. While Andy claims that his signature was forged on the Alside credit application and guaranty, he admitted there is no evidence suggesting that the Cavitch Defendants had knowledge of the alleged forgery. Furthermore, as discussed earlier, Andy's assertion that his signature was forged is incredible in light of significant evidence to the contrary. Accordingly, Andy's attempt to use the Alside matter to support his OCAA/RICO claim against the Cavitch Defendants must fail.
 {¶ 46} Finally, appellants have not presented any evidence to support an OCAA/RICO claim on behalf of A.G. Financial and, therefore, any such claim likewise fails as a matter of law.
 {¶ 47} Appellants' first, second and third assignments of error are overruled.
 {¶ 48} In light of our resolution of appellants' assignments of error, the Cavitch Defendants' cross-appeal is moot and need not be considered. See App.R. 12(A)(1)(c).
Judgment affirmed.
It is ordered that appellees recover of appellants costs herein taxed.
The court finds there were reasonable grounds for this appeal. It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Celebrezze, JR., P.J., and Rocco, J., concur.
[1] In their complaint, appellants also named as defendants several now defunct corporations. After granting the Cavitch Defendants' motion for summary judgment, the trial court entered a judgment entry with the appropriate Civ.R. 54(B) language and, accordingly, this matter is ripe for appeal.